**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ARLES SILVIO CRUZ GONZALEZ** | **CASE NO. 1:26-CV-03610 SEC P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **WINN CORRECTIONAL CENTER ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM ORDER

Before the Court is an "Emergency Petitioner for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Complaint for Mandamus, Declaratory, and Injunctive Relief" (Doc. 2).

## BACKGROUND

Petitioner, Arles Silvio Cruz Gonzalez (A#096-040-086) is a native and citizen of Nicaragua.[1] He was brought to the United States by his mother in 2004, when he was eight years old. Both he and his mother were placed in removal proceedings before the Houston Immigration Court.[2]

On or about August 4, 2005, when Petitioner was nine years old, the Houston Immigration Court granted voluntary departure. Petitioner asserts that he did not participate in, understand, or consent to that grant; the decision was made by an adult on his behalf. When the family did not depart, the grant converted by operation of law into an order of removal, of which Petitioner had no knowledge.[3] A removal order was entered in 2005, when he was a nine-year-old derivative respondent in his mother's proceedings before the

[1] Petitioner for Writ of Habeas Corpus, Doc. 1, Introduction.
[2] *Id.*
[3] *Id.* ¶ 12.

Houston Immigration Court. He did not know the removal order existed until December 25, 2025, during a traffic stop.

Petitioner was raised in Houston and went to school in the Spring Independent School District until his withdrawal. He received a Deferred Action for Childhood Arrivals in 2013 and again in 2015.[4] Petitioner married a United States citizen and has lived in this country for more than twenty (20) years.[5] Due to this marriage and advice from an immigration attorney who told him he could not maintain DACA while pursuing a marriage-based case, Petitioner allowed his DACA to lapse and pursued lawful permanent residence through his spouse.[6] The marriage ended in a divorce in 2023,[7] and Petitioner alleges he was unable to complete consular processing because of the deteriorating political situation in Nicaragua.[8]

On December 25, 2025, Petitioner was stopped by local law enforcement for a minor traffic violation. He was subsequently transferred to ICE custody based on the removal order when he was a child.[9] Petitioner was immediately removed to Nicaragua where he alleges he has no immediate family, only a distant relative.[10]

Petitioner informs the Court that the Ortega–Murillo government has stripped at least 452 Nicaraguans of their nationality, holds dozens of political prisoners, and has been found by the United Nations Group of Human Rights Experts on Nicaragua to operate a

---

[4] *Id.*
[5] *Id.*
[6] *Id.* ¶ 15.
[7] Exhibit A.7.
[8] ¶ 15, Doc. 1.
[9] *Id.* ¶ 19.
[10] *Id.* ¶ ¶ 20-21.

transnational "machinery of persecution" against exiles and returnees, using the army, police, migration authorities, and consulates to surveil Nicaraguans abroad.[11] (Human Rights Watch, *World Report 2026: Nicaragua* (Jan. 2026)); Ex. F.3 (UN Group of Human Rights Experts on Nicaragua, press releases of Oct. 30, 2025 and Mar. 10, 2026). In March 2026, Vice President Rosario Murillo publicly ordered "extreme surveillance" of Nicaraguans deported from the United States, including police visits to their homes and monitoring by party structures, on the stated premise that deportees may be U.S.-trained "infiltrators."[12] (Confidencial, *Rosario Murillo Orders "Extreme Surveillance" of Nicaraguans Deported From the United States* (Mar. 30, 2026)).

Due to the unrest in Nicaragua and being separated from his family, Petitioner returned to the United States without inspection on or about February 2026. He was apprehended on or about February 16, 2026, and prosecuted in *United States v. Cruz-Gonzalez*, No. 26-mj-00638 (complaint filed on or about Mar. 5, 2026).[13] Petitioner pleaded guilty and was convicted of Illegal Re-entry of a removed alien 8 U.S.C. § 1326 (a) on September 10, 2026.[14] He served that sentence in the custody of the United States Marshals Service and the Bureau of Prisons from approximately February 2026 until September 10, 2026.[15]

On or about September 11, 2026, upon completion of his criminal sentence, Petitioner was released to ICE custody and transferred to ICE's Camp East Montana facility

---

[11] Exhibit F.2.
[12] Exhibit F.4
[13] Exhibit G.1
[14] Ex. G.2.
[15] Ex. G.3.

at Fort Bliss, El Paso, Texas. Petitioner is now detained at Winn Correctional Center in Winnfield, Louisiana, under a reinstated order of removal, 8 U.S.C. § 1231(a)(5), having been transferred there from ICE's Camp East Montana facility on or about September 15, 2026.[16]

## LAW AND ANALYSIS

On March 26, 2026, Petitioner, through undersigned counsel, filed an Emergency Motion to Reopen Sua Sponte with the Houston Immigration Court, seeking reopening of the 2005 proceedings and a grant of voluntary departure.[17] The Immigration Judge denied the Motion on April 30, 2026, and Petitioner appealed to the Board of Immigration Appeals ("BIA").[18]

Petitioner has expressed to Respondents a fear of persecution and torture if returned to Nicaragua and complains that he has not been referred to an asylum officer for a reasonable-fear interview. Petitioner, through counsel, maintains that 8 C.F.R. § 241.8(e) requires Respondents to refer Petitioner "immediately" to an asylum officer for a reasonable-fear interview under 8 C.F.R. § 208.31. Petitioner argues that this duty is mandatory and ministerial, and Respondents have no discretion to decline it, to defer it, or to condition it on any further showing. Petitioner maintains that Respondent's agency action is "unlawfully withheld" and, in the alternative, "unreasonably delayed," within the meaning of 5 U.S.C. § 706(1), and violates the agency's obligation to conclude matters presented to it "within a reasonable time," 5 U.S.C. § 555(b). It also independently violates

[16] *Id.*
[17] Ex. E.1.
[18] Exhibits E.2 and E.3.

8 C.F.R. §§ 241.8(e) and 208.31, which bind the agency. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954). In simple terms, Petitioner contends he has a clear right to the referral and Respondents have a clear, non-discretionary duty to make it, thus Mandamus lies under 28 U.S.C. § 1361.

Petitioner's concern is that respondents may execute the reinstated order and remove Peitioner to Nicaragua without screening his fear claim in violation of the regulation and of the United States' obligation under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture ("CAT").

Petitioner asserts that this Court has authority under the All Writs Act, 28 U.S.C. § 1651(1) to enter such orders as are necessary to preserve its jurisdiction to adjudicate this claim.

In his habeas Petitioner, Petitioner maintains that his Fifth Amendment due process claims have been violated because he has not been granted an individualized custody determination. Petitioner asserts that he has been in continuous federal custody since approximately February 2026—first in the custody of the United States Marshals Service and the Bureau of Prisons on the illegal-reentry charge, and since September 11, 2026, in the custody of Respondents.

Petitioner complains that he has lost his physical liberty in that he is being detained without a bond hearing, and being held in a rural parish jail hundreds of miles away from his family and counsel in Houston, Texas. He reminds the Court that he was brought to this country at eight, grew up here, was twice vetted and granted deferred action by USCIS,

and he has no home or family anywhere else. Petitioner asserts that he is not a risk of flight and his detention serves no legitimate purpose.

Petitioner's Motion requests that the Court (1) direct Respondents to file a return and show cause within three days why the Petition should not be granted, 28 U.S.C. § 2243; (2) restrain Respondents and those acting in concert with them, pending adjudication of the Petition or further order of the Court from removing Petitioner from the United States and from transferring him outside the Western District of Louisiana; (3) direct Respondents, within three days, to refer Petitioner to a USCIS asylum officer for a reasonable-fear interview under 8 C.F.R. §§ 241.8(e) and 208.31, and to file notice of the referral with the Court; and(4) waived security under Rule 65(c).

A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than if it is granted; and (4) that a temporary restraining order will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

Rule 65 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) Specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) The movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Petitioner does not need to be physically present in this judicial district to obtain relief. Jurisdiction attaches when a habeas petition is filed, and it is not destroyed by a subsequent transfer or custodial change. See *McClure v. Hopper*, 577 F.2d 938, 939-40 (5th Cir. 1978) *cert. denied*, 439 U.S. 1077 (1979). Courts routinely adjudicate § 2241 petitions on the briefs, without the need for in-person hearings, and without a petitioner's physical presence in a nearby facility. Substantively, claims regarding prison transfers are generally not cognizable under § 2241. See *Greenhill v. Menifee*, 202 F. App'x 799, 800 (5th Cir. 2006). (claim not cognizable under § 2241because prisoners lack a constitutionally protected interest where they are incarcerated); *Zapata v. United States*, 264 F. App'x 242, 243-44 (3d Cir. 2008)) (district court lacked jurisdiction over a § 2241petition that challenged a transfer). Petitioner has no protected liberty interest in being housed in a particular facility. *Armendariz-Mata v. Lappin*, 157 F.App'x 767 (5th Cir. 2005) citing *Yates v. Stalder* , 217 F.3d 332,334 (5th Cir. 2000)).

Petitioner argues that he is likely to succeed on the merits concerning Respondent's failure to immediately refer him to an asylum officer under 8 C.F.R. § 241.8(e). Petitioner contends that there is no discretionary element to which Respondents could prevail. Petitioner asserts that a withholding of removal and CAT protection are not "relief" foreclosed by § 1231(a)(5), and the reasonable-fear process is the sole gateway to them. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529–30 (2021).

Next, Petitioner maintains that he faces irreparable harm if removed to Nicaragua without any screening of a fear claim, noting the evidence submitted as to the country's conditions,[19] citing *Nken v. Holder,* 556 U.S. 418, 435 (2009). Petitioner also suggests that Respondents would suffer no cognizable harm from an order requiring them to do what their own regulation already commands and to refrain, for the days it takes this Court to rule, from executing a removal that the regulation independently forbids until the fear process concludes. And as such, the public interest lies in the Government's compliance with its own binding rules and with the United States' non-refoulement obligations, 8 U.S.C. § 1231(b)(3), *Nken*, 556 U.S. at 436, and in the orderly adjudication of habeas petitions by the court in which they are filed.

Finally, Petitioner requests that the Court dispense with security under Rule 65(c) as the restrained party faces no monetary loss. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

The Court is concerned that Petitioner has not been afforded a reasonable-fear interview under 8 C.F.R. § § 241.8(e) and 208.3. Petitioner informs the Court that he has complied with Rule 65 of the Federal Rules of Civil Procedure by furnishing actual notice of the time of making this application, and copies of all papers, to the United States Attorney's Office for the Western District of Louisiana by email contemporaneously with filing. As such, the Court finds that a temporary restraining order is warranted to the extent that Petitioner should not be removed from the United States until the Court determines if

[19] Exhibits F.1-F.4.

he is entitled to a reasonable-fear interview under 8 C.F.R. § § 241.8(e)[20] and 208.31. Accordingly,

**IT IS ORDERED** that the Emergency Petitioner for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Complaint for Mandamus, Declaratory, and Injunctive Relief" (Doc. 2) is **GRANTED** in part, to the extent that Respondents are prohibited from removing Petitioner, Arles Silvio Cruz Gonzalez (A#096-040-086) from the United States until the Court determines if he is entitled to a reasonable-fear interview, and a decision is made, whether in favor of Petitioner, or in favor of Respondents, and all appeals are exhausted. The Court further **ORDERS** that any security is waived, and the Clerk is **ORDERED** to email a copy of this Memorandum Order to the Civil Chief of the United States Attorney's Office.

**IT IS FURTHER ORDERED** that Respondents shall file a response to Petitioner's requested relief in this Motion within 3 days of this Order (28 U.S.C. § 2243) to show cause why Petitioner should not be granted a reasonable-fear interview.

**THUS DONE AND SIGNED** in chambers on this 17th day of September, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

[20] (e) Exception for withholding of removal. If an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31 of this chapter.